Thank you, Your Honors. May it please the Court, Marianne Dugan for the appellant, Western Radio. I would request three minutes of rebuttal if I don't run out of time. Thank you. I think I would like to focus, unless there are specific questions, on two issues that have been briefed. One is the noncompliance of the Forest Service with the terms of the lease replication provision, the lease replication provisions. And the other is the disparate treatment compared to other site users. That second issue, I think, is a little briefer than what I want to go into in the first issue. So unless the Court has a preference, I would go to that second issue. The government's brief on that issue focuses on AT&T, and that is a much, that's a very complex series of facts and events, which I've briefed in the opening, included in the opening brief. But a much more simple comparison is the gas transmission tower that was entirely unauthorized. In contrast to Western Radio, who actually got written authorization to build his second, his new tower. But it was authorization that was contingent upon some further work and sort of checking out in terms of interference and so on. So you had authorization that it was contingent, and the contingency had not been removed when the work began. Understood, Your Honor. But for purposes of comparison with gas transmission, they did not even submit an application. So ER 208 and 211 note that the Forest Service requested compliance from gas transmission four years ago. And a year later, they noted there was no compliance, but they simply said, please coordinate removal as soon as possible. It would be greatly appreciated. So how does that argument work? Is that an argument that means that you didn't breach, or that it's simply unfair because while you breached, so did the other guy? It's arbitrary and capricious because the rules are being applied across the board with other people, with other site users in a way that allows them to continue serving the public with their communications facilities. But for Western Radio, he has been singled out. And here, to go back to the first issue, which is related, the most extreme example is that although the lease actually gives 90 days for cure, allows 90 days to cure any noncompliance, that's ER 62, Section 5B3. The ranger revoked the lease 32 days after sending the January 2013 noncompliance letter. So ER 72 and ER 87 are those two letters. And in fact, there was actual compliance within 90, within a reasonable period of time. For example, the paint was done after the snow melted in the spring. And the reason that the Forest Service gave for revoking within 32 days was that Western Radio had refused to choose one of two, quote, options within 14 days of the Forest Service letter. However, the options letter, first of all, both options required Western Radio to promise to remove the new tower, even though the letter did not list that as an item of noncompliance. If you look at page ER 73 to 74, listing the items of noncompliance, the unauthorized tower is not listed as one of those seven items. And then the options were just take it or leave it, blanket lists, a wish list from the Forest Service that went way beyond the seven items of noncompliance. And so what Western Radio did was send a letter within 30 days asking for clarification, making requests for information, and explaining what items were being worked on. And that's ER 85 to 86. The, you know, and there's a lot of minutiae about the dish color and which, you know, site plan applies. But I think that issue of timing is perhaps the most blatant way in which Western Radio was treated differently from other site users. And that alone, your honors, should allow you to reverse and send this back for, to proceed on the merits. If you have no other questions, I will save my time for rebuttal. Thank you. Thank you. May it please the court, Neal Evans on behalf of the United States. I'll address those issues that were raised by Western Radio in the opening argument. First of all, the disparate treatment argument has been raised three different times in the context of Bivens' actions brought by Western Radio against individual Forest Service defendants. As the district court recognized in this case, the submission by Western Radio of facts outside of the administrative record did not need to be considered, particularly the allegations regarding AT&T and gas transmission. Nonetheless, the district court considered those allegations and in its opinion at ER 21 clearly distinguished all three of the examples that Western Radio was citing as we've been treated in a different way. This was raised in the initial breach of lease and trespass argument, the case that the Ninth Circuit confirmed. It was raised in the context of Bivens' actions, which at least four district court's opinions have rejected as there being no evidence for different treatment. And there's no evidence that gas transmission line, the gas transmission case that wasn't a case, this situation that Western Radio cites too, was anywhere near the situation we have here where there's litigation. There's been a district court determination that the lease was breached. There's a trespass. The trespassing tower is ordered to come down, although there's a stay of that order. So the situations are completely different. I would also add that there's, as the district court recognized, there's really no evidence submitted by Western Radio that they have complied with the notice of noncompliance or tried to cure what the Forest Service identified as problems and breaches of the lease. The fact is, as the record indicates, on January 1, 2013, Western Radio was provided a notice of violation, noncompliance, an opportunity to cure. Under the circumstances, it was very reasonable for the Forest Service to say, look, you've got a couple of options. You can take down the trespassing tower. But that letter of noncompliance also said, you know, we understand that you're litigating this case. You continue to litigate whether or not there was a trespass, whether or not there was a breach of lease. We recognize that right of yours to continue to litigate it, go up on appeal. So if you don't want to take it down, the second option says you can wait for another court order. But in the meantime, would you please let us know who your contractors are, post a bond, and take some other steps? The district court, when it reviewed that administrative process that occurred between January 1 of 2013 and ultimately a forest supervisor affirming the revocation in July, a seven-month time period, the district court recognized that that was a reasonable time to make those decisions. It was the middle of winter. The commitment that the Forest Service was asking of Western Radio was just that. Tell us what you want to do. Do you want to take the tower down? Do you want to leave it up pending another court order? But in the meantime, please do the following steps. And there was a 30-day time period. There was a 90-day time period. We weren't asking for that trespassing tower to come down until early in the summer of 2013 at that time. So the Forest Service crafted the notice and opportunity to cure, particularly for these circumstances. It's a communications tower up in the middle of Deschutes Forest. Crafted it particularly for Western Radio. They followed that process. The 90-day time period that counsel mentions, it's in the lease, says that you can give them an opportunity and cure it not to exceed 90 days. So that's the Forest Service. You know, just don't exceed 90 days. They can cure within that time period. And if you look at, in particular, Western Radio's response to the notice, much like the brief in this case, Western Radio continues to argue whether or not there was a breach of the lease. The law of the case then, as is now, is that there was a breach of the lease, and yet the owner of Western Radio continued to argue that there wasn't. There was no indication, as the district court recognized, that Western Radio was intent upon curing the lease. There was no request for more time by Western Radio. It was just much of the same argument that Western Radio has made to the Forest Service and has continued to make before this court. Unless there are other questions, I don't have anything else. Thank you. Thank you. Thank you, Your Honors. When Judge Simon held that there had been a breach of the lease, he chose not to order revocation of the lease. Instead, he told the Forest Service to go back and follow the provisions of the lease and the legal requirements for revoking the lease as a threshold matter. The Forest Service then chose the language of its January 2013 letter, and in that letter did not list presence of the tower as an item of noncompliance. There were seven items of noncompliance. None of them were the presence of the tower. And yet their demanded response was you take Option A, Option 1, or you take Option 2, both of which required removal of the tower at some point. And then as well as recurring the seven items and then putting on some other trimmings on that tree. When Western Radio responded and said, well, I need more information and I'm working on such and such items, three days later the lease was revoked based on the failure to choose an option. Regarding the disparate treatment, this is not a Bivens claim, and so what happened was the Bivens claims previously were dismissed on procedural grounds where the court held, based on Wilkie from the Supreme Court, that you cannot sue under Bivens if you have an available APA claim. So then we brought an APA claim, and that's why we are back in court on the disparate treatment. The defendant is begging the question of why was Western Radio subjected to litigation. The difference between the others and Western Radio that was presented just now is that Western Radio was in litigation. Western Radio got sued by the Forest Service. Why? That's different from gas transmissions whose entire unauthorized tower has been allowed to remain going on five years, and SOU has been allowed to keep its equipment on Forest Service land now going on seven years. And so there is certainly disparate treatment, arbitrary and capricious behavior by the Forest Service. Thank you, Your Honors. Thank you. Thank you both for the argument this morning. The case just argued, Western Radio Services is submitted.
judges: McKeown, W. Fletcher, Fisher